[No. 13421.  *En Banc.*  July 5, 1916.]

THE STATE OF WASHINGTON, *on the Relation of Frank Berry et al., Appellant,* v. THE SUPERIOR COURT FOR THURSTON COUNTY, *D. F. Wright, Judge, Respondent.*[1]

CONSTITUTIONAL LAW—ACT PROPOSED BY INITIATOR—INTERFERENCE BY COURTS. The proponent of an initiative measure, under Const., art. 2, § 1, as amended in 1912, and Laws 1913, p. 433 (Rem. 1915 Code, § 4971-27), is in no sense a legislator, nor is the filing by him of a proposed bill or law a legislative step with which courts have no right to interfere.

STATUTES—ENACTMENT—INITIATIVE MEASURES—PREAMBLE—ARGUMENTATIVE STATEMENTS. The proponent of an initiative measure cannot, under the guise of a preamble, insert an argument for the enactment of the measure to be published at the expense of the state, in view of Laws 1913, p. 433 (Rem. 1915 Code, § 4971-27) requiring proponents of initiative measures to pay the cost of printing arguments for the bill.

SAME. Where an initiative measure is merely an amendment to the Fisheries Code, relating to the closed season, fishing appliances, licenses and fees therefor, in harmony with the settled and recognized policy of the state, it is not permissible to preface the same with an argumentative preamble reciting in an insidious manner that the prosperity and happiness of the people is the highest aim of

[1]Reported in 159 Pac. 92.

. the state, the necessity of protection and conservation of the food supply, and that the same shall not be monopolized by the few, etc., and further assertion of long established principles, the purpose of which is to obtain publication of the argument at the expense of the state.

STATUTES—DIRECT LEGISLATION—ENACTMENT OF LAW—POWER OF COURTS—PUBLICATION OF ARGUMENT—INJUNCTION. Courts have power to enjoin the filing of an initiative measure which improperly includes an argument in behalf of its enactment, since such filing of the measure is in no sense a legislative proceeding, but constitutes merely the exercise of a political right in a wrongful and illegal manner.

ELLIS, BAUSMAN, PARKER, and FULLERTON, JJ., dissent.

Certiorari to review a judgment of the superior court for Thurston county, D. F. Wright, J., entered March 27, 1916, dismissing an action to enjoin the circulation, printing and distribution of a proposed initiative measure, after a hearing before the court. Reversed.

*Chas. S. Gleason,* for relators, contended:

I.   Section 1 of the proposed act is not a legislative act but an argument and a recital of facts not true. What the act really is may be determined by the court by an examination of the act itself. *State ex rel. Halliburton v. Roach,* 230 Mo. 408, 130 S. W. 689, 139 Am. St. 639. By virtue of § 1, art. 2, of the constitution of Washington, as amended in 1912, and ch. 138 of the Laws of 1913, p. 418, a method was afforded for procuring arguments for initiative bills and the costs of such arguments were to be borne by the proponents of such bills: *State ex rel. Chamberlain v. Howell,* 80 Wash. 692, 142 Pac. 1. Section 1 of the act is merely an argument and placed there for the purpose of shifting the expenses thereof from the proponents of the bill to the state and of placing the argument in a more advantageous position, which procedure is unconstitutional by virtue of § 1, art. 2, of the constitution of Washington as amended in 1912, wherein the right reserved by the people is to propose bills

and laws, and no right was reserved by them to propose arguments, and the words "bills and laws" must be construed "statutes and legislative enactments" as those terms are commonly understood. *State ex rel. Halliburton v. Roach, supra.* Chapter 138, Laws 1913, p. 418, requiring proponents to pay the cost of printing the arguments is mandatory. *State ex rel. Chamberlain v. Howell, supra; Stevens v. Benson,* 50 Ore. 269, 91 Pac. 577. Section 1 of the proposed act, even if construed as a preamble, cannot be considered a part of the act or have any weight unless the act is ambiguous. *Huntworth v. Tanner,* 87 Wash. 670, 152 Pac. 523.

II.   Steps prior to the filing of the initiative petition signed by the required number of legal voters are not a part of the legal legislative process. *State ex rel. McNary v. Olcott,* 62 Ore. 277, 125 Pac. 303; *State ex rel. Halliburton v. Roach, supra; Hodges v. Dawdy,* 104 Ark. 583, 149 S. W. 656; *State ex rel. Kiehl v. Howell,* 77 Wash. 651, 138 Pac. 286; *State ex rel. Chamberlain v. Howell, supra.*

III.   Superior courts have jurisdiction to interfere and grant injunctive relief to prevent threatened wrongful and unlawful acts at the behest of a taxpayer, although the acts may be political in character and no property rights involved. *Rickey v. Williams,* 8 Wash. 479, 36 Pac. 480; *Krieschel v. Board of Com'rs,* 12 Wash. 428, 41 Pac. 186; *State ex rel. Fawcett v. Superior Court,* 14 Wash. 604, 45 Pac. 23, 33 L. R. A. 674; *Heffner v. Board of County Com'rs,* 16 Wash. 273, 47 Pac. 430; *Nichols v. School District,* 39 Wash. 137, 81 Pac. 325; *Stern v. Spokane,* 60 Wash. 325, 111 Pac. 231; *State ex rel. McAvoy v. Gilliam,* 60 Wash. 420, 111 Pac. 401; *Lewis County v. Montfort,* 72 Wash. 248, 130 Pac. 115; *Mann v. Wright,* 81 Wash. 358, 142 Pac. 697; *State ex rel. Case v. Superior Court,* 81 Wash. 623, 143 Pac. 461; *Livermore v. Waite,* 102 Cal. 113, 36 Pac. 424, 25 L. R. A. 312; *Holmberg v. Jones,* 7 Idaho 752, 65 Pac. 563.

The *Attorney General* and *C. J. France*, for respondent, contended:

I. Relators have shown no case entitling them to injunctive relief, as irreparable injury must be shown before an injunction will issue. *Tacoma v. Bridges*, 25 Wash. 221, 65 Pac. 186; *Winsor v. Hanson*, 40 Wash. 423, 82 Pac. 710; *Bouckaert v. State Board of Land Com'rs*, 84 Wash. 356, 146 Pac. 848; *Wintermute v. Tacoma Light & Water Co.*, 3 Wash. 727, 29 Pac. 444; *Morse v. O'Connell*, 7 Wash. 117, 34 Pac. 426; *State ex rel. Cranmer v. Thorson*, 9 S. D. 149, 68 N. W. 202, 33 L. R. A. 582. Distinction between taxpayer's suit against municipal corporation and against the state. 5 Pomeroy, Equity Jurisprudence (3d ed.), § 326; *Jones v. Reed*, 3 Wash. 57, 27 Pac. 1067; *Maxwell v. Smith*, 87 Wash. 629, 152 Pac. 530.

II. The question is a political one and will not be reviewed by the courts, as equity deals with property rights and not political questions. 5 Pomeroy, Equity Jurisprudence (3d ed.), § 324; *Parmeter v. Bourne*, 8 Wash. 45, 35 Pac. 586, 757; *State ex rel. Fawcett v. Superior Court*, 14 Wash. 604, 45 Pac. 23, 33 L. R. A. 674; *Heffner v. Board of County Com'rs*, 16 Wash. 273, 47 Pac. 430; *Nichols v. School District*, 39 Wash. 137, 81 Pac. 325; *Quigley v. Phelps*, 74 Wash. 73, 132 Pac. 738, Ann. Cas. 1915 A. 679; *Mann v. Wright*, 81 Wash. 358, 142 Pac. 697; *State ex rel. Crawford v. Dunbar*, 48 Ore. 109, 85 Pac. 337; *Libby v. Olcott*, 66 Ore. 124, 134 Pac. 13; *Friendly v. Olcott*, 61 Ore. 580, 123 Pac. 53. Questions respecting the submission of initiative measures are political. *State ex rel. Case v. Superior Court*, 81 Wash. 623, 143 Pac. 461.

III. Relators seek to have the judicial department interfere with the legislative functions of the legislative department—a matter outside the jurisdiction of the courts. There is no difference between passing a law by the legislature and by initiative proceedings, in so far as the question of whether or not it is political is concerned. The judiciary

has no jurisdiction to interfere with the legislative discretion vested in the legislature or delegated by the legislature to subsidiary municipal corporations. *State ex rel. Rose v. Superior Court of Milwaukee County*, 105 Wis. 651, 81 N. W. 1046, 48 L. R. A. 819; *Nougues v. Douglass*, 7 Cal. 65; 8 Cyc., p. 848, § 5; *Ex Parte Echols*, 39 Ala. 698, 88 Am. Dec. 749; *Frantz v. Autry*, 18 Okl. 561, 91 Pac. 193; *State v. Carey*, 4 Wash. 424, 30 Pac. 729; *Ponischil v. Hoquiam Sash etc. Co.*, 41 Wash. 303, 83 Pac. 316; *Selde v. Lincoln County*, 25 Wash. 198, 65 Pac. 192; *Ewing v. Seattle*, 55 Wash. 229, 104 Pac. 259; *Tenny v. Seattle Elec. Co.*, 48 Wash. 150, 92 Pac. 895; *Stern v. Spokane*, 60 Wash. 325, 111 Pac. 231. Legislative process begins to run before the petition with the requisite number of signatures is filed with the secretary of state. *State ex rel. Cranmer v. Thorson*, 9 S. D. 149, 68 N. W. 202, 33 L. R. A. 582; *State ex rel. Bullard v. Osborn*, 16 Ariz. 247, 143 Pac. 117; *People v. Mills*, 30 Colo. 262, 70 Pac. 322; *Scott v. James*, 114 Va. 297, 76 S. E. 283; *Threadgill v. Cross*, 26 Okl. 403, 109 Pac. 558; *Duggan v. City of Emporia*, 84 Kan. 429, 144 Pac. 235, Ann. Cas. 1912 A. 719; *Dallas v. Dallas Consol. Elec. St. R. Co.*, 105 Tex. 337, 148 S. W. 292; *Speer v. People*, 52 Colo. 325, 122 Pac. 768; *Pfeifer v. Graves*, 88 Ohio St. 473, 104 N. E. 529.

IV. A preamble is not only customary, but also good practice in legislation. *State ex rel. Davis-Smith Co. v. Clausen*, 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466.

V. Courts are not authorized to look to the motive of a person for inserting a clause in an initiative bill. *Ettor v. Tacoma*, 57 Wash. 50, 106 Pac. 478, 107 Pac. 1061.

HOLCOMB, J.—This is a proceeding to review the proceedings and judgment of the superior court in holding that it had no jurisdiction, and entering a judgment of dismissal and for costs against relators in a certain cause begun and

tried therein, wherein the relators were plaintiffs and the secretary of state and certain other persons as "The Joint Legislative Committee" and as individuals were defendants, to enjoin the defendants from preparing or causing to be printed blank petitions for proposed initiative measure No. 22, and from printing and attaching to such petitions arguments for said pretended measure No. 22, and from circulating or attempting to obtain signatures of legal voters upon such petitions. A copy of section 1, of initiative measure No. 22, as filed by the joint legislative committee in the office of the secretary of state, is as follows:

"Section 1. Section 1 of the Fisheries Code of Washington is amended to read as follows:

"Section 1. Short Title and Declaration of Purposes.

"This act shall be known as the 'Fisheries Code of Washington.'

"The prosperity and happiness of all of its people are hereby declared to be the highest aim of the state and the protection and utilization of its great natural resources, to the end that all the functions of government may be economically carried on without burdensome and confiscatory taxation being placed upon the home builders and real producers of the state, is paramount. Protection and conservation of the great sources of food supply are necessary that they shall not be monopolized by the few to the detriment and discomfort of the many, and inasmuch as it has been legally determined that the fish in waters of the state of Washington are the property of said state, it is hereby declared that the purposes of this act are to foster the propagation, protection and development of this source of food supply and to create a revenue therefrom by retaining a portion of the value of its own property from those who are hereby allowed to appropriate the same, under the regulations hereinafter set forth, the proceeds of which shall be turned into the state treasury for the general support of the state government, to the end that the burden of taxation on its people may be thereby reduced."

The trial judge held, in effect, that the question raised was political and, therefore, a court of equity could not interfere.

During the last forty years of the nineteenth century there arose and grew in democratic republics and commonwealths a powerful distrust and dislike of their parliaments. They became tired of the representative system. In the latter part of that period the people of the democracies submitted to their representative legislatures only under the pressure of stern necessity. The growing distrust and contempt for legislative bodies—municipal, state, and Federal, and the tendency to restrict them culminated, with the beginning of this century, in numerous returns by states to the primitive system of direct legislation modified by modern systems of election. In this state, after enabling legislation, an amend-. ment to art. 2, § 1, of the constitution relating to legislative powers, which established a dual system of legislation, was adopted by vote of the electors in 1912. It was by that amendment provided that:

"The legislative authority  .  .  .  shall be vested in the legislature  .  .  ., but the people reserve to themselves the power to propose bills, laws, and to enact or reject the same at the polls, independent of the legislature," etc., etc.

Under the further provisions of this constitutional amendment,.

"The first power reserved by the people is the initiative. Ten per centum, but in no case more than fifty thousand, of the legal voters shall be required to propose any measure by such petition, and every such petition shall include the full text of the measure so proposed. Initiative petitions shall be filed with the secretary of state not less than four months before the election at which they are to be voted upon, or not less than ten days before any regular session of the legislature. If filed at least four months before the election at which they are to be voted upon, he [the secretary of state] shall submit the same to the vote of the people at the said election. If such petitions are filed not less than ten days before any regular session of the legislature, he shall transmit the same to the legislature as soon as it convenes and organizes. Such initiative measure shall take precedence over all other measures in the legislature except ap-

propriation bills and shall be either enacted or rejected *without* change or amendment by the legislature before the end of such regular session."

It is further provided that the veto power of the governor shall not extend to measures enacted by the people, either upon initiative or upon the second power reserved to the people and designated the "referendum." It also further provided that the reserved powers of the people "shall be self-executing, but legislation may be enacted especially to facilitate its operation." It is finally peremptorily commanded by this amendment that:

"The legislature shall provide methods of publicity of all laws or parts of laws, and amendments to the constitution referred to the people with arguments for and against the laws and amendments so referred, so that each voter of the state shall receive the publication at least fifty days before the election at which they are to be voted upon." Const., art. 2, § 1.

In obedience to and furtherance of the above mandate, the legislature, at its 1913 session, enacted a facilitative measure providing for regular processes of initiating measures, and for publicity and arguments for and against them at the expense of the persons filing arguments in support of or against such measures, respectively, prohibiting the circulation of more than two arguments in support of, and more than three in opposition to, any initiative measure, and providing for the arrangement of ballot title by the *Attorney General*, the printing of arguments upon the proposed measure by the secretary of state at least sixty days prior to the election at which they are to be submitted, and the transmission of same by him to every voter in the state not less than fifty-five days before the election. Laws 1913, p. 433 (Rem. 1915 Code, § 4971-27).

The facilitating act, above partially outlined, was not only a complete delegation of power to the legislature, but a positive command of the paramount law to be produced. Without it the self-executing provisions of the constitution

as amended could be followed, but might result in confusion and disorder in many instances. There can be in such a vast state no assemblage of all or a majority of the voters to propose and vote upon measures or to reject measures already enacted. It is possible for an act, if very brief and concise, to be proposed and voted upon at regular elections in identical form by every voter, but very uncertain. Hence the people provided that their reserved powers of legislation should be facilitated and promoted, but not curtailed or hindered by a legislative act providing a comprehensive scheme to facilitate the employment of the legislative powers reserved by the people in mass. The facilitating act carefully provides certain steps to be taken in order to prevent unfairness and fraud and confusion and disorder. It provides that any legal voter or committee or organization of legal voters may "propose" any measure to be submitted to the legislature or to the people. Upon filing such proposed measure within certain periods prior to a regular election or session of the legislature, the *Attorney General* shall prepare the ballot title to such measure. It is carefully provided that the ballot title so prepared shall be of "not to exceed one hundred words," and "shall express, and give a true and impartial statement of the purpose of such measure, and shall not be intentionally an argument, or likely to create prejudice, either for or against the measure." Provision is made for an appeal to the courts from the action of the *Attorney General* in preparing the ballot title. The act provides for the utmost publicity of the proposed measure within the state, and for not more than two arguments in favor of and three against the proposed measure, the publication of the arguments to be paid for, not by the state, but by the parties submitting the arguments. This requirement of the law was sustained in *State ex rel. Chamberlain v. Howell*, 80 Wash. 692, 142 Pac. 1. It is now asserted by appellants that this requirement of the facilitating act is violated and evaded by the proponents of the present

measure by a pretended "preamble" which is neither necessary nor proper and is mere argument and false statements in support of the proposed measure, which, if permitted, will enable the proponents to have their arguments printed by the public at no expense to the proponents, under the guise of part of the bill or proposed law, and give undue advantage to proponents and work irreparable injury to the opponents of the measure.

To establish that the procedure questioned is unfair is not sufficient. Any law or proposed law may be, and often is, unfair to some. Except when dealing with essential morals or fundamental principles, in the modern complexity of human affairs and relations there is little legislation that can be said to be entirely fair. Legislative bodies, whether delegated or principals in mass, are not to be stopped from exercising the supreme function of making laws by such considerations. The sole question now to be determined is, Have they the power? Courts will not concern themselves with any questions of policy or hardship or expediency. Nor will they in any case intervene to hinder or influence the process of legislation in any of its steps. Were it a question of whether a delegated member of a legislative body of any kind could introduce to that body a "bill" or law of any kind, no matter how arbitrary, how novel, or how foolish, the answer at the very outset would unhesitatingly be that no other department of our triune form of government could in any wise interpose. We now have a dual system of legislation; one by a delegated, bi-cameral legislature, deliberative, maker of its own rules of procedure in general; the other by the legal voters of the state in mass. Here we have the question, Is the proponent of an initiative measure in any sense a legislator? And ancillary to that, Is the filing of a proposed bill or law a legislative step? A third and vital question then arises, Can the courts interfere?

As to the first question, we conceive that an initiator of a bill (which means the draft of an act or proposed law) is

not, under this system of direct legislation, a legislator. *State ex rel. McNary v. Olcott*, 62 Ore. 277, 125 Pac. 303. He is merely given license or privilege to propose and file a proposed measure. This is a preliminary step in the process of legislating. It may be dispensed with, but it is nevertheless provided for in furthering or "facilitating" the system. He must proceed in conformity with the license. The question then is, Are these proponents exercising this privilege legally? In the first place, it must be considered that here we have a step or procedure authorized and granted by law and to be exercised and administered under a general law authorized by the supreme law, the constitution; not a legislator acting in a parliamentary, deliberative body, empowered within certain constitutional limitations to make its own rules of procedure at the moment, and co-equal with any other branch of government. But, it is said, the people in their legislative capacity are superior to all other branches of government, superior to the legislature which made this law; in fact, supreme in their legislative capacity. The people in their legislative capacity are not, however, superior to the written and fixed constitution. Nor is the individual who proceeds to initiate any legislation. His act in initiating a measure is but a voluntary one, and is permitted and defined, limited and circumscribed, by the constitution and the laws passed in obedience to and compliance with the constitution as amended.

Such a step has not the immunity of the old delegated, protected legislative act and privilege. One voting upon the final passage of an initiated or referred bill at the election could not claim the privilege of voting by any method he pleased. He could not go to the polls and cast his vote *viva voce* under our election system, and demand that it be recorded and counted. Nor could he electioneer or solicit votes within the polling place, for such is prohibited. Nor could he insert a new word or clause or expunge anything from the proposed measure. The voter on proposed or re-

ferred measures is controlled and regulated by positive general laws. There is no sanctity conferred upon the proposal of an intended law to be initiated and voted upon by the people.

The legal right granted to the proponents is a private and a political right to propose a "bill, or law," to be initiated by a petition if signed by the constitutional number of legal voters. Now, are proponents proceeding in their legislative capacity by the prescribed method? As private members of the legislative body in mass, certain legal political rights are conferred upon them to be exercised in a prescribed manner. These rights must be considered as no greater than the rights of other members of the legislative body in mass to oppose the proposed measure. It cannot be assumed that the right of one legal voter to attempt to obtain the enactment of a given measure is greater than the right of other legal voters to attempt to prevent its passage. All are equal before the law. There is no presumption that, because certain legal voters or legislators desire and propose certain legislation upon a certain subject, the same is desired by the voters in mass. In fact, it can be assumed as a safe postulate that other members of the voting mass will oppose it. It is the sole ground of relators here that they are entitled to interfere in the matter because they are voters and do oppose the proposed measure, irrespective of the merits of the measure and regardless of the reasons for their opposition, and that if the proponents of the measure are proceeding in accordance with the positive law, their only recourse is at the polls. This position is sound. This brings us to the precise question as to the legality of the procedure of the proponents.

They propose a purely amendatory bill or law upon a subject of legislation long recognized and acted upon in this state, the regulation of fishing in the public waters of the state and deriving a revenue therefrom. The territorial legislatures of 1877, 1879, 1881, the first legislature of the

state in 1889-90, and each succeeding legislature, to and in-cluding that of 1915, passed legislation in some manner reg-ulating fishing, protecting, conserving and fostering fish, and providing for revenue therefrom. In 1915 the legislature enacted a comprehensive regulation and revenue act concern-ing fish and fishing industries and declared it to be "The Fisheries Code of Washington." Laws 1915, ch. 31, p. 67; Rem. 1915 Code, § 5150-1 *et seq.* The proponents have proposed a bill for direct action by the voters which would amend certain sections of the fisheries code, and preface the positive rules of action for the future by proposing to amend § 1 of the existing fisheries code so as to include a "preamble" or "declaration of purposes." The proposed amendments in no wise extend or broaden the scope of the existing policy of the law. It is insisted by the proponents that it is their con-stitutional political right to insert any declarations of pur-poses or "preamble" in any proposed legislation introduced by initiative; that preambles are legitimate as component and proper portions of legislation, are so recognized by law, and serve several important functions in connection with the making and interpreting of laws.

In the entrance upon new fields of legislation, in order to justify the legislation "to the impartial consideration of man-kind," preambles are frequently adopted. Thus, the framers of the constitution of the United States explained their pur-pose to mankind by a preamble which for conciseness and brevity and general and comprehensive breadth of scope is unequaled. A preamble is defined in law to be:

"An introductory clause in a constitution, contract, or other instrument, reciting or declaring the motive or design of what follows." New Standard Dictionary.

"The introductory part of a statute, which states the rea-sons and intent of the law." Webster's Unabridged Dic-tionary.

A cursory reading of the proposed preamble must con-vince any one that it contains much that is more than merely

recitative of the motive or design of what follows, for it contains much that must appear to be merely polemic and open to serious controversy as assuming the existence of certain conditions, whether such be actually true or false, and in a very insidious manner. For instance, after reciting the fundamental principle of democracies that "the prosperity and happiness of all of its people are hereby declared to be the highest aim of the state,"—a principle universally known and acknowledged by every one and needing no re-enactment into law in the United States—it insinuates that, without such legislation as is now proposed, as if for the first time in history, "burdensome and confiscatory taxation" is "being placed upon the home-builders and real producers of the state." It then insidiously argues that, "Protection and conservation of the great sources of food supply are necessary [as if for the first time asserted legislatively] that they shall not be monopolized by the few to the detriment and discomfort of the many." And the only changes made in the existing fisheries code, proposed by this measure to be amended, are to prohibit fishing during the closed season in the Columbia river where it forms the state boundary, where it is now permitted; to further regulate or prohibit certain fishing apparatus in certain waters, requiring additional licenses, increasing the fees to be paid the state for certain licenses and for certain quantities of fish caught; further regulating the reports to be made, and limiting licenses to citizens or persons who have declared intention to become citizens of the United States and actually resident in this state, the existing law extending its permission to such persons resident in adjoining states.

The proposed amendments, while important, are not novel, original, or subversive. They are in harmony with the long settled and recognized policy of the state. No monopoly in its fish was ever legalized by the state any more than that conferred by the licensing of certain persons coming within the permission of the law who would pay the required license

fees, exactly as is now proposed.  This preamble is an *argumentum ad hominem*, appealing to the uninformed on the face of the proposed enactment, and to be printed by and at the expense of the state.  There is further pure argument in the remainder of this proposed preamble, and further assertion of long established principles as to which there is no necessity to declare anew the reason for the law.  A law is a rule of action.  An argument is not.

Notwithstanding the obvious, the proponents insist that it is their right to include any declarations of purpose in a proposed measure, under the constitution and the law, and that the courts have no right to interfere with a legislative procedure or a political right.  They illustrate by citing the declaration of purposes as a preamble to our "Workmen's Compensation Act" (Laws 1911, ch. 74, p. 345; Rem. 1915 Code, § 6604-1 *et seq.*), reciting long existing and recognized mischiefs and an avowed purpose of subverting a long established system of private compensation and trial by jury for injuries to workmen.  Here was a most manifest need for a preamble containing a declaration of *new principles* to supplant the old, withdraw the right of trial by jury, and remedy a general condition.

The "Employment Agencies Law," passed by the people in 1914 and containing a declaration of purpose to bring a new class of occupation within the scope of the police power of the state and regulate or abolish it; and the Oregon "Ten Hour Law," containing a preamble of the same nature, are also cited as illustrations.  As to the last mentioned law, it is argued that, on appeal to the supreme court of the United States to test its constitutionality, a "brief" has been written to demonstrate the facts set forth in the preamble, consisting of two large volumes of one thousand pages, and that if the supreme court of the United States sustains the law, it will sustain it by reason of the statements contained in the preamble and the demonstration contained in the "brief" that the facts recited in the preamble

are established economic facts.  If that be true, and if preambles are to become the established guide to interpretation by the court of the laws and of their constitutionality, we may expect such one thousand-paged "briefs" hereafter to be made part of the preamble, published by and at the expense of the state, whenever the proponent of a measure may desire, and forever set at rest by mere enactment thereof any arguments that might thereafter be made as to not only the wisdom, necessity, and expediency of the act, which are purely legislative questions, but also as to the constitutionality of an act, which is judicial.  In neither of the laws cited, however, and the determination of their constitutionality by the courts, was there presented the question of the right of the proponent, undisturbed, to include anything he pleased as a preamble, under such system as has been provided in this state.

It is also urged by respondents that we have declared in regard to the "Workmen's Compensation Act," *(State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466), and in regard to the "Employment Agencies Law" of 1914 *(Huntworth v. Tanner,* 87 Wash. 670, 152 Pac. 523), that a preamble is a most necessary and important constituent part of a law.

In the *Davis* case, a mere recital was made (p. 169) of the declared mischiefs to be remedied and purpose of the new law, a law entirely novel and original here, in that it takes away the right of trial by jury in large classes of cases and from large numbers of employers and employees and substitutes another remedy.  In the *Huntworth* case, the preamble was resorted to as a source of interpretation of the true scope and intent of a prohibitive and highly penal law, and as a designation of the persons to be brought within the protection of the law, the declaration in the preamble of purpose and mischiefs to be remedied being, "a declaration of a policy to advance the police power into a new field;" and the preamble was more than a mere preamble,

and disclosed an intention to protect, from the conditions existing and brought about by the employment agencies, as "workers" only those who were liable to imposition and extortion.

Both in England and in this country it was at one time a common practice to prefix to each law a preface or preamble stating the motives and inducement to the making of it; but it is not an essential part of the statute and is now generally omitted. It is not only not essential and generally omitted, but it is without force in a legislative sense, being but a guide to the intentions of the framer. As such guide it is often of importance. In this sense it is said to be a key to open the understanding of a statute. The preamble is properly referred to when doubts or ambiguities arise upon the words of the enacting part. It can never enlarge. It is no part of the law. Sedgwick, Construction of Statutory & Constitutional Law (2d ed.), pp. 42, 43; 1 Story, Constitution (5th ed.), book 3, ch. 6; *Edwards v. Pope*, 3 Scam. (Ill.) 465; Bouvier's Law Dictionary. If it is no part of the law, proponents have no constitutional right to propose it as a law under art. 2 as amended.

In the instant case, there is no need or place for the alleged declaration of purpose, and it is simply and purely the especial argument advanced by the proponents in advocacy of the measure. Its proper place is in the publicity pamphlet to be issued by the secretary of state under the "facilitating" law, and paid for *pro rata* by the proponents.

The principal question remains yet to be decided: Can the judicial department interfere with the legislative and enjoin the publication at the expense of the state of the proposed preamble as a part of a "bill" or proposed law? This we approach with considerable concern.

Respondents cite, and his Honor below relied largely upon, *State ex rel. Crawford v. Dunbar*, 48 Ore. 109, 85 Pac. 337, to the effect that courts of equity have no jurisdiction to interfere in political matters where no property rights are af-

fected, and that the presentation of arguments as parts of initiative measures is such a political matter. We should have decided in that case as did the supreme court of Oregon, for the reason that the direct legislation provision of the Oregon constitution contained no provision for further legislation to facilitate its operation and no mandate to the legislature to provide methods of publicity of proposed laws or arguments. An act passed by the legislature (Laws of Oregon, 1903, p. 244), regulating initiative and referendum procedure, which provided that the ballot title of such measures should be designated by the proponents, contained no restrictions upon argumentative ballot titles, but did provide that both proponents and opponents thereof might file pamphlets, printed at their own expense, containing their respective arguments, to be circulated by the secretary of state. This was the state of the law at the time of the decision in the cited case, and the case, therefore, furnishes us no assistance. The above decision was made in 1906, and the next session of the Oregon legislature repealed the act of 1903 and enacted one providing that the ballot titles of initiative measures should be prepared by the Attorney General and should not be argumentative. Laws of Oregon, 1907, p. 398.

We have no hesitancy in saying that, if the opponents of the measure under consideration could induce the secretary of state to include in some way in the proposed ballot their arguments against the measure, however brief, the proponents would forthwith demand and be entitled to the interference of the courts to prevent it as in violation of their rights. Nor can it be doubted that, if the opponents could induce the secretary of state to print and distribute their arguments against the proposed measure at the expense of the state and without expense to the opponents, the proponents would demand and be entitled to equity's interference to restrain such unlawful expenditure of public money. How then can it be

asserted with any reason that the political right of the proponent is any greater, or the legal and equitable right of the opponent any less, than the other?

We have said that public officers will be restrained from the threatened illegal expenditure of public money. *Rickey v. Williams*, 8 Wash. 479, 36 Pac. 480; *Krieschel v. Board of Com'rs*, 12 Wash. 428, 41 Pac. 186. We have said that we will no longer in this state draw any fine distinctions between personal and property rights, unless it may be in favor of personal liberty. *Huntworth v. Tanner*, 87 Wash. 670, 152 Pac. 523. It is impossible to foresee all the exigencies of society which may require the aid and assistance of courts of equity to protect rights or redress wrongs. The jurisdiction of such courts is manifestly indispensable in a great variety of cases for the purposes of social justice, and therefore should be fostered and upheld by a steady confidence. 2 Story, Equity Jurisprudence (13th ed.), p. 263.

In *State ex rel. Mohr v. Seattle*, 59 Wash. 68, 109 Pac. 309, we held that an injunction against the enforcement of a city ordinance, at the suit of one who had no interest except as a voter and signer of a referendum petition, should be granted. In *State ex rel. Kiehl v. Howell*, 77 Wash. 651, 138 Pac. 286, we assumed jurisdiction to determine the political question whether the secretary of state could refuse to proceed with an initiative measure filed more than ten months prior to a regular election. We entertained jurisdiction to determine the political question and right of relator to have the secretary of state file, print, and distribute, at the expense of the state, the arguments presented in favor of an initiative measure, in *State ex rel. Chamberlain v. Howell*, 80 Wash. 692, 142 Pac. 1.

The present situation seems in some measure to be an attempt to evade the plain provisions of the statute regarding the publication of arguments and the payment of the expense thereof, and the decision in the last cited case. Ordinarily the reason for an enactment lies wholly in its enact-

ment. The existence of a law ought to be its own reason. While all preambles to initiative legislation would not be subject to criticism as mere arguments by the proponents, but intended to be proper declarations of purpose in a proposed law, we are convinced that the one under consideration is; and that it is not a mere political question nor an exempt legislative process, but is regulated by the law, and is subject to judicial interposition.

Reversed, and remanded with instructions to grant the injunction. The proponents may, however, at their election, expunge from the proposed measure all of § 1 after the clause, "This act shall be known as the 'Fisheries Code of Washington'," and have the remainder of the proposed act submitted under the ballot title prepared by the Attorney General, the proponents to furnish the arguments in support of their measure separately to the secretary of state for distribution. Relators will recover costs.

MORRIS, C. J., MAIN, MOUNT, and CHADWICK, JJ., concur.

ELLIS, J. (dissenting)—The majority opinion gives intrinsic evidence of most careful and conscientious study, but it seems to me that the result reached is unsound for several reasons:

I. It seems to be conceded, as it must be conceded, that the judiciary has no power to interfere with, construe, or pass upon any bill or law while it is undergoing any phase of the legislative process. This is as true of bills initiated by the people as it is of bills in the legislature.

"The appellant concedes that the courts are powerless to restrain a member of the Legislature from introducing any measure, valid or invalid, for the reason that the courts cannot interfere with the action of the legislative department. What legal warrant has a court to enjoin the Secretary of State from certifying a measure whether valid or invalid? Is not the initiative petition also a step in the process of legislation? For the Secretary of State, or the courts, to assume in advance the power and right to decide whether the proposed

measure was invalid would be tantamount to claiming the power of life and death over every initiated measure by the people. It would limit the right of the people to propose only valid laws, whereas the other lawmaking body, the Legislature, would go untrammeled as to the legal soundness of its measures." *State ex rel. Bullard v. Osborn*, 16 Ariz. 247, 143 Pac. 117, 118.

As said by the supreme court of Ohio in *Pfeifer v. Graves*, 88 Ohio St. 473, 104 N. E. 529, in which it was sought to restrain the secretary of state from submitting a proposed initiative bill to the electors:

"There is another indisputable and imperative reason why the remedy they invoke must be denied. We cannot intervene in the process of legislation and enjoin the proceedings of the legislative department of the state. That department is free to act upon its own judgment of its constitutional powers. We have not even advisory jurisdiction to render opinions upon mooted questions about constitutional limitations of the legislative functions and we will not presume to control the exercise of that function of government by the General Assembly, much less by the people, in whom all the power abides."

If, as held by the majority, the filing of the bill is no part of the legislative process of proposing and passing laws, which right is reserved by art. 2, § 1, of the constitution as amended, then the legislature had no power to provide for such filing, since its power in the premises is expressly limited by the constitutional amendment itself to legislation "especially to facilitate its operation," that is, to facilitate the operation of the constitutional amendment. It would seem to be begging the question to say that the initiator of a bill is not, under this system of direct legislation, a legislator and that "he is merely given the license or privilege of proposing and filing a proposed measure;" that "this is a preliminary step in the process of legislation;" and that "it may be dispensed with, but is nevertheless provided for in furthering or 'facilitating' the system." The argument answers itself. The leg-

islature can no more *confer* a right in the premises than it can take away a right. The right to propose direct legislation is conferred, or more correctly speaking, reserved by the constitution itself. The legislature can only provide the process or procedure "facilitating" the exercise of that right. *Whatever it provides is, therefore, part of the legislative process or procedure, since it has no power under the constitution to provide for anything else.* In *State ex rel. McNary v. Olcott,* 62 Ore. 277, 125 Pac. 303, largely relied upon by the majority, this question is but meagerly argued, and the fundamental consideration which I have attempted to point out is wholly overlooked. As applied to our constitution, that decision is basically unsound.

The other case most strongly relied upon by relators, *State ex rel. Halliburton v. Roach,* 230 Mo. 408, 130 S. W. 689, 139 Am. St. 639, in so far as it seems to sustain the the majority, is ably and, it seems to me, conclusively answered by the dissenting opinion of Judge Woodson. But, in any event, it is not apposite on the question here presented. That case involved a proposed amendment to the state constitution of Missouri by an initiative petition. The proposed amendment provided for dividing the state into senatorial districts. The court held that this proposed amendment to the constitution was not in its nature a constitutional amendment at all, but was merely a legislative enactment of a temporary nature in the guise of a constitutional amendment. Furthermore, the court found a sufficient reason for the result reached, in that the whole text of the measure was not included in the petition as required by the initiative provision of the Missouri constitution itself. It seems to me that the very fact that the legislature has provided this procedure makes it *ipso facto* a part of the legislative process or procedure. If this be true, it is elementary that the judiciary has no right to interfere.

II. Reduced to specific terms, the basic idea of the majority opinion seems to be that the last paragraph of the

constitutional amendment in question imposes a mandate upon the legislature to provide by statute that no argumentative matter shall be included in any initiative bill or measure. That paragraph reads as follows:

"The legislature shall provide methods of publicity of all laws or parts of laws, and amendments to the constitution referred to the people with arguments for and against the laws and amendments so referred, so that each voter of the state shall receive the publication at least fifty days before the election at which they are to be voted upon." Const., art. 2, § 1.

It seems to me that this language is capable of no such construction. It certainly does not so provide in terms, and it is working implication to the fag-ends to say that the power conferred to provide methods of publicity of such laws with arguments for and against them implies, either necessarily or at all, any power to say what shall or shall not go into any initiative bill or measure. When this plain fact is clearly grasped, the case of *State ex rel. Crawford v. Dunbar*, 48 Ore. 109, 85 Pac. 337, clearly sustains the position that the question here is a political one of which a court of chancery has no jurisdiction. Even after the legislature of Oregon had provided a remedy by injunction to prevent the filing of defective ballot titles, the supreme court held that the question was political and that the remedy by injunction could only be invoked by the state through its proper law officer. *Friendly v. Olcott*, 61 Ore. 580, 123 Pac. 53. The court said:

"The plaintiff does not show that he will be injured in any property or civil right by the contemplated action of the secretary of state in certifying the ballot title to the county clerks. Neither will his political right to vote on the measure at the election be infringed. He can then, as always, exercise his electoral franchise unaffected by anything shown in his bill. If he can enjoin the secretary of state now, he can sue out a writ the day before that officer would certify the ballot title, and thus balk the whole people in the exercise of their constitutional reserve power to reject at the polls any law

passed by the legislative assembly.   The principle is sound
and well settled that as against public officers, where their
action involves purely public or political rights, the drastic
remedy of injunction can be invoked only by the state acting
through its proper law officer.   In some instances a suit may
be maintained in the name of the state on the relation of a
citizen who can show some special injury to his civil or prop-
erty rights but this case is not in that category.   To sustain
plaintiff's suit when he shows no injury to his private rights
would be a pronounced example of government by injunc-
tion."

In my opinion, to confer such power of censorship upon
either the legislature or court, at the suit of a private party,
would require a further amendment to the constitution.

III.   But, even conceding that the legislature has the
power to say what the proposed bill or measure shall or shall
not contain, the legislature has not exercised, nor attempted
to exercise, any such power.   It has merely fixed the length
of the arguments to be published with the bill and declared
that the parties interesting themselves for or against a bill
shall pay for printing their respective arguments.   It is a
far cry from this to a declaration that the bill itself shall
be subjected to censorship and purged by the courts of all
argumentative matter whether found in the preamble or dis-
tributed throughout the various sections of the bill, as it
easily might be.   If it is the duty of the court to so purge
the preamble, it is equally its duty to so purge every section.
Every preamble is in its nature essentially argumentative,
and every law carries in its provisions an argument for its
own existence.   Assuming the power, it is difficult for me to
believe that either the people, when they adopted the consti-
tutional amendment, or the legislature, when it passed the fa-
cilitating act, ever intended that the courts should so scan
and rewrite initiative bills as to purge them of argumentative
matter.

The argument of the majority touching the exclusion by
the facilitating act of argumentative matter from the title

to be prepared by the *Attorney General* may be passed with the simple observation that the legislature has covered the matter of title in terms. The title and the body of the act, including the preamble, are wholly different matters. The framing of a title in order to cover succinctly, yet sufficiently comprehensively, the contents of the act is a matter requiring certain technical skill. There is a reason why it should not be argumentative, but terse and complete, which cannot be applied to the body of the act without in effect taking away from the people the power to propose bills or laws. The preparation of the title is facilitation. The rewriting of the bill is usurpation.

The majority also concede, as of course it must be conceded, that the preamble, though not a necessary or operative part of a bill or law, is at least a proper part often performing a very important function as a "guide to the intentions of the framer." The preamble in the legislative sense is defined:

"Preamble. A clause at the beginning of a constitution or statute explanatory of the reasons for its enactment and the objects sought to be accomplished." Black's Law Dictionary (2d ed.), 927.

While it is sometimes said that the preamble is "no part of the law," the very definition and the authorities cited in support of that statement in the majority opinion show that this language is used in the qualified sense that it is no part of the law as an operative rule of action, but that it may be a very important part in determining that rule of action.

"The importance of examining the preamble, for the purpose of expounding the language of a statute, has been long felt, and universally conceded in all juridical discussions. It is an admitted maxim in the ordinary course of the administration of justice, that the preamble of a statute is a key to open the mind of the makers, as to the mischiefs which are to be remedied and the objects which are to be accomplished by the provisions of the statute." 1 Story, Constitution (5th ed.), Book 3, ch. 6, § 459, p. 350.

As authority for the view that, in this broader sense, the preamble is not only a part of the law but sometimes a most important part, whether enacted by the legislature or initiated by the people, we have only to consult our own comparatively recent decisions, notably, *State ex rel. Davis-Smith Co. v. Clausen*, 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466; *Huntworth v. Tanner*, 87 Wash. 670, 152 Pac. 523; and the recent decision of *Stertz v. Industrial Insurance Commission*, 91 Wash. 588, 158 Pac. 256. In these cases, and especially in the *Huntworth* case, the preamble was resorted to not merely to explain what was ambiguous, but to limit the operative part of the law in which but for the preamble there was not a shadow of ambiguity. In all modesty I would suggest that it is no sufficient answer to say that in these statutes the preambles were important parts because they were statutes exercising the police power in new fields. The bill here in question, if it ever becomes a law in any form, will be an exercise of the police power, and whether in a new field or an old one, the preamble in such legislation is peculiarly important as determining the intended scope of the operative part of the law as a rule of action. Indeed, the comparatively recent extending of the exercise of the police power seems to have worked a necessary revival of the formerly waning use of the preamble as an aid to intention. How can any court know until concrete cases arise under any law exercising the police power, touching either a new or an old field, whether or when or where, in the practical operation of the law, an ambiguity or doubt may arise as to the intention and scope of the law requiring a resort to the preamble for its solution? If the courts are to be required to remodel, reform and purge the preamble of all argumentative matter not necessary to solve ambiguities in the operative part of the law, then the courts must in every instance either say that there shall be no preamble, thus abrogating the admitted power of the lawmakers to define their intentions, or scan the entire act as to its every provision without the

aid of briefs and determine in advance every ambiguity that might arise in every possible case which a reference to the preamble might be necessary to solve. Aside from the intolerable burden which the latter course would necessarily impose upon the courts, its performance in most cases would be manifestly impossible. It can hardly be doubted that of all bills or laws, initiative measures will be as a rule the most inartificially drawn and the most open to the charge of ambiguity. It would seem, therefore, that of all laws, those initiated by the people most require the aid of a preamble as a key to the intention of the proponents.

IV. The assertion of the majority that it is unfair to permit argumentative matter in the preamble to be published at the expense of the state while the opponents of the bill must pay for publishing their own arguments offers no excuse for this court to legislate in the premises. This court has already decided that this is a legislative question. In *State ex rel. Chamberlain v. Howell,* 80 Wash. 692, 696, 142 Pac. 1, this court said:

"The constitution appears to make no distinction between the publicity of the initiative measure itself and the publicity of the arguments for or against such measure or proposed law. But there is nothing in the constitution prohibiting the legislature from requiring a fee for filing, printing, or binding either the proposed measure, or the arguments. It is clear that, where the constitution does not prohibit the legislature from requiring a fee in such case, it is within the power of the legislature to require a fee. This is elementary and no authority is needed to sustain it."

This is direct authority, if authority for a thing so obvious were needed, that the legislature has the same power to provide that the proposers of a bill shall pay for its publication that it has to provide that the persons whether opposed to or in favor of a bill shall pay for publishing the separate arguments. A law exercising that power would furnish a complete remedy for any supposed abuse of the preamble. The argument of the majority opinion on this

point might well be addressed to the legislature.  It certainly should not move this court to invade the legislative province as this court itself has so recently defined it.  This also disposes of what seems to me the groundless fear that, unless the courts, as legal knights errant, come to the rescue, one thousand page briefs may hereafter become a part of the preamble.  It may be, as stated by the majority, that there is a growing popular distrust of the representative system of legislation, but the courts have no constitutional power to entertain that distrust and proceed to supply legislation, however much needed, on a matter within the admitted province of the legislature through fear that the legislature may not supply it.

V.  Finally, even assuming that all that I have said in the foregoing is unsound, and that the court has a discretionary power to review and revise initiative bills, it seems to me that the bill here in question presents no such flagrant violation of the rule or law against argumentative matter evolved by the majority as to invoke the supposed discretion.  I invite a reading of the preamble here presented in comparison with that involved and set out in the opinion in the case of *Huntworth v. Tanner, supra.*  A candid comparison will demonstrate that the one is not a whit more argumentative, nor *a priori* false or insidious in its premises, than the other.  Yet in the *Huntworth* case this court *employed the very argument of the preamble* to control, circumscribe and limit the broader language of the operative part of the act.  No one would have said in advance of a concrete case that the plain words of the operative part of that bill required the use of a preamble to construe them, and no one can say in advance that the operative parts of the bill here involved may not require the aid of the preamble to determine whether they apply to concrete cases until the cases arise.  Suppose, for example, it were argued in some future concrete case that the prohibited use of given fishing apparatus in given waters had no tendency to conserve or pre-

serve the food supply of this state. Without the preamble it might be successfully answered that the act evinced no purpose to conserve that supply. With the aid of the preamble the argument, if founded in demonstrable fact, would be unanswerable under the doctrine of the *Huntworth* case. The supposed case is by no means impossible, and in such a case the cancellation of the preamble by the majority of this court would clearly prove to be legislation, pure and simple. To sanction the preamble as a controlling part of the law in one case and cut it out as no part of the law in another smacks of caprice.

In any view of this case, I cannot agree with the majority. I therefore dissent.

BAUSMAN, PARKER, and FULLERTON, JJ., concur with ELLIS, J.